

U.S. Department of Justice

United States Attorney
Southern District of New York

50 Main Street, Suite 1100
White Plains, New York 10606

March 14, 2023

**BY ECF/EMAIL**
The Honorable Cathy Seibel
United States District Judge
Southern District of New York
United States District Courthouse
300 Quarropas Street
White Plains, NY 10601

      Re: *United States v. Ardae Hines*, 22 Cr. 42 (CS)

Dear Judge Seibel:

The Government writes to respectfully request that the Court allow the Government to file the below sur-reply regarding the special needs doctrine, in response to the defendant Ardae Hines's reply brief in support of his motion to suppress.[1]  Defense counsel consents to this request.

### I.    Background

Before his release to parole supervision in 2017, Hines signed forms recognizing that his residence could be subject to search, and that he could not violate the law or possess controlled substances.  Gov't Ex. D.  Nonetheless, law enforcement had intercepted phone communications indicating that the defendant arranged to sell drugs to William Fennell in March 2017. Gov't Ex. F.  Subsequently, on or about June 12, 2017, a federal grand jury in this District indicted Hines for multiple criminal offenses, including narcotics conspiracy and racketeering conspiracy.  *See United States v. Skylar Davis, et al.*, 17 Cr. 364 (CS).  Thus, by June 14, 2017, the day of Hines's arrest, his supervising parole officer had not merely learned of "allegations" of Hines's criminal conduct; he had learned that a grand jury had already found probable cause that the defendant had committed federal crimes and that an arrest warrant had been issued.  Among other things, the initial *Davis* indictment specifically referenced a telephone conversation between Hines and Fennell on March 11, 2017 in which "they discussed the quality of heroin that HINES supplied to FENNELL."  (Def. Ex. 1 ¶ 20(j)).

### II.    Legal Standard

A state's operation of its parole system constitutes "special needs" "beyond law enforcement that may justify departures from the usual warrant and probable-cause requirements"

---

[1] For the reasons stated in the Government's opposition, the Court should deny Hines' motion to suppress in total; however, because in his initial brief Hines did not explain his legal reasoning for why the special needs doctrine does not apply, Def. Mot. at 10 n.19, this sur-reply is limited to that issue.  If the Court requests additional information about any other issue, the Government is happy to provide it.

of the Fourth Amendment. *United States v. Reyes*, 283 F.3d 446, 461 (2d Cir. 2002). These special needs are based on the parolee's status: "a parole officer, of necessity, must have investigative powers to gather information about the parolee's activities, environment, and social contacts" so as "[t]o ensure that the conditions of parole are not being violated and to monitor the parolee's progress of reintegration into society." *Id.* at 458 (citations omitted). As a result, once a parole officer learns of "allegations, if true, [which] would have constituted criminal parole violations" by a parolee under her supervision, "it [is] clearly reasonable for her to investigate the accusations further," including by conducting a warrantless search of the parolee's premises. *United States v. Barner*, 666 F.3d 79, 85 (2d Cir. 2012). Indeed, the Second Circuit has held that the "allegation of a parole violation and the resulting issuance of a warrant for retaking . . . operate to remove a parolee one step farther from the constitutional protection enjoyed by ordinary citizens." *Id.* at 84 (citing *United States v. Polito*, 583 F.2d 48, 55 (2d Cir. 1978)).

### III. Discussion

As the Government argued in its opposition to Hines' motion to suppress, the evidence of Hines' criminal conduct and the arrest warrant were sufficient on their own to permit his parole officer to execute a plenary search of Hines' residence to further investigate whether Hines had violated his parole conditions. *Barner*, 666 F.3d at 85 (allegation of parole violation and issuance of arrest warrant justified search); *United States v. Bazemore*, 20 Cr. 573 (ER), 2021 WL 1719233, at *3 (S.D.N.Y. Apr. 30, 2021) (parole officer's knowledge of prior arrest sufficient to support search); *United States v. Nazario*, No. 04 CR. 796 (DAB), 2005 WL 2234036, at *3 (S.D.N.Y. Sept. 8, 2005), *aff'd*, 374 F. App'x 63 (2d Cir. 2010) (upholding search of residence after arrest of parolee). Hines also "signed a certificate expressly consenting to [] parole searches," "manifest[ing] an awareness that supervision can include intrusions into their residence and, thus, ha[d] a severely diminished expectation of privacy." *United States v. Newton*, 369 F.3d 659, 665 (2d Cir. 2004) (citations omitted). During such a parole search, all contraband or other evidence of Hines' violation of his parole conditions could lawfully be seized. *United States v. Devaughn*, No. 21 CR. 308 (NSR), 2022 WL 101910, at *5 (S.D.N.Y. Jan. 11, 2022) (denying motion to suppress cellphone seized during parole search where parole officers had a basis to believe the cellphones would contain evidence of parole violations). This plainly included Hines' phones, particularly given the evidence from the Title III wiretap that Hines was using a phone to conduct unlawful narcotics activity in violation of his parole conditions.

Hines makes three primary arguments to the contrary, but each is inconsistent with this black letter law.

*First*, Hines suggests that the parole officer could not search his residence because the officer lacked information that "weapon[s] or dangerous contraband" were present in his house, Hines Reply Mem. at 2, which meant there was "no immediate safety concern." Hines Reply Mem. at 7. As an initial matter, the indictment charged that members of the Southside enterprise, of which Hines was alleged to be a member, committed, agreed, attempted, and threatened to commit acts of violence (Def. Ex. 1 ¶ 4), including assault, attempted murder, and murder. (*Id*. ¶¶ 5(a), 6(a), 7(a)). It further alleged that, as a member of the enterprise, Hines was engaged in large-scale narcotics trafficking. (*Id.* ¶¶ 9, 10) (alleging that as part of the racketeering, Hines conspired to distribute more than 280 grams of crack and more than 1 kilogram of heroin). Thus, based on the indictment alone, parole had a basis to search Hines' residence for "weapons or dangerous contraband." More to the point, however, Hines's argument wholly misunderstands the underlying doctrine. The focus of the special needs exception as it relates to parole searches is on the parolee's

*status*, not the allegations about his conduct. *Barner*, 666 F.3d at 458 (parole officers must "ensure that the conditions of parole are not being violated and to monitor the parolee's progress of reintegration into society."). As a result, the Second Circuit has affirmed parole searches when the parole officer suspected only that the parolee had engaged in technical violations of the terms of parole, not that the parolee possessed dangerous contraband. *United States v. Nazario*, 374 F. App'x 63, 65 (2d Cir. 2010) ("parole officers who conducted the search did so after determining that Nazario had likely committed two parole violations: he was not in his home after his 9:00 p.m. curfew, and, when he did arrive home, he appeared to be under the influence of drugs.")[2]; *accord United States v. Quinones*, 457 F. App'x 68, 70 (2d Cir. 2012) (affirming parole search where the parole officer learned the parolee had lied to the officer and discovered $450 in cash on the parolee's person); *United States v. Jackson*, No. 21-CR-6119FPG, 2022 WL 16556718, at *10 (W.D.N.Y. Oct. 31, 2022), report and recommendation adopted, No. 21-CR-6119-FPG, 2023 WL 1462853 (W.D.N.Y. Feb. 2, 2023) (upholding parole search after officer learned that the parolee had committed technical violations of parole); *accord United States v. DeJesus*, 538 F. Supp. 3d 382, 394 (S.D.N.Y. 2021) (upholding parole search when parole officer suspected parolee of committing fraud offenses). Thus, Officer Vega was justified in searching Hines's residence.

*Second*, Hines argues that his parole officer could not seize his cellphone, since that item "in and of itself is not a dangerous weapon or contraband." Hines Reply Mem. at 2. However there is no authority, and Hines cites none, for the proposition that only a dangerous weapon or contraband can be seized during a parole search. The parole conditions the defendant signed stated that he "fully underst[ood] that [his] person, residence and property are subject to search and inspection." (Gov't Ex. D at 2 and continuing at ¶ 4 "I will permit my Parole Officer to visit me at my residence and/or place of employment and I will permit the search and inspection of my person, residence and property."). These conditions were not limited: *any* evidence of a violation of his parole conditions, whether on his person, in his residence, or *in his property*, were subject to seizure. Since Hines had been already charged with criminal violations of the racketeering and narcotics laws, there was reasonable suspicion that his cellphone contained evidence of such violations and could thus be seized. *Reyes*, 283 F.3d at 468 (probation officers can seize items during a search if they have "reasonable grounds to believe that the item is contraband *or constitutes evidence of a violation of a condition of release*.") (emphasis added, citation omitted); *Devaughn*, 2022 WL 101910, at *4 (same as to parole officers). Here, there was ample evidence in this case that Hines's Phone constituted and contained evidence of a violation of his parole conditions, given that he was intercepted using a cellular phone to distribute drugs to William Fennell, and thus there was "corroborated information that [he] was involved in [] narcotics

---

[2] Hines argues that the Court should not rely on Second Circuit summary orders. Hines Reply Mem. at 6 n.1. Although summary orders are non-precedential, those cases provide persuasive, informative guidance, and Hines has set forth no reason to deviate from their logic or conclusions. See *Mendez v. Starwood Hotels & Resorts Worldwide, Inc.*, 746 F. Supp. 2d 575, 595 (S.D.N.Y. 2010) (McMahon, J.); (Though a "summary order has no precedential effect on any court . . . it has to be deemed some indication of how the Court of Appeals might rule were it to decide the issue in a binding opinion.") *see also, e.g., United States v. Tejada*, 824 F. Supp. 2d 473, 475 (S.D.N.Y. 2010) (Marrero, J.) ("The Court is not persuaded that it is at liberty not only to disregard but contradict a Second Circuit ruling squarely on point merely because it was rendered in a summary order. Though the application of such holdings is technically circumscribed by the immediate case adjudged, the decisions nonetheless constitute valuable appellate guidance.").

activity." Hines Reply Mem. at 9 (citing *Devaughn*, 2022 WL 101910).³ Indeed, though the Court need not decide the issue, since the parole officers had reasonable suspicion that the phone contained evidence of a violation of a condition of release, sister circuits have specifically upheld a categorical rule that "warrantless searches of [a parolee's] cell phone were constitutionally reasonable, given [the defendant's] status as a parolee." *United States v. Johnson*, 875 F.3d 1265, 1274–75 (9th Cir. 2017); *accord United States v. Wood*, 16 F.4th 529, 536 (7th Cir. 2021); *see also United States v. Cook*, No. 20-CR-84-LJV, 2021 WL 6133280, at **3–4 (W.D.N.Y. Dec. 27, 2021).⁴ Denying Hines's motion to suppress is also consistent with the Second Circuit's guidance that law enforcement officers can seize cellphones and other communication devices found upon arrest without a warrant in cases involving "racketeering and narcotics conspiracies" because such items "were immediately identifiable as evidence of criminal conduct." *United States v. Babilonia*, 854 F.3d 163, 180–81 (2d Cir. 2017) (citing *United States v. Meregildo*, No. 11 CR 576 (WHP), 2012 WL 4378047, at *4 (S.D.N.Y. Sept. 24, 2012)).

*Finally*, Hines asserts that the seizure of his phone was performed by "state parole officers whose sole purpose was to recover a cellphone . . . targeted by federal authorities who eschewed obtaining a search warrant from a federal judge." Hines Reply Mem. 2. He reiterates this theme throughout to assert that the seizure was not reasonably related to the parole officer's duties. But the facts are clear: Parole Officer Vega had an appropriate basis to search Hines' residence, as part of his own independent obligation to investigate parole violations, including the conduct underlying the federal indictment. Hines cites to no case that supports the proposition that the fact that Officer Vega performed the parole search during an arrest operation by federal law enforcement agents would be a basis for suppression. To start, Hines' invitation to ignore Second Circuit precedent notwithstanding, Hines Reply Mem. at 10, the Second Circuit has squarely held that the "stalking horse" theory "is not a valid defense in this Circuit." *Reyes*, 283 F.3d at 463; *accord Newton*, 369 F.3d at 667 ("reiterat[ing] *Reyes*'s rejection of stalking horse challenges"). Thus, coordination between parole and other members of law enforcement is not, in and of itself, a basis to suppress evidence. *Newton*, 369 F.3d at 667 ("[I]t is difficult to imagine a situation" in which a probation/parole officer who entered a residence with other law enforcement officials based on "information about a supervisee's illegal activities . . . would not be pursuing legitimate supervision objectives." (citations omitted)). Indeed, the Second Circuit has frequently upheld parole searches when parole officers are accompanied by other members of law enforcement. *Quinones*, 457 F. App'x at 69; *Black v. Petitinato*, 761 F. App'x 18, 21 (2d Cir. 2019); *accord United States v. Bazemore*, 20 Cr. 573 (ER), 2021 WL 1719233, at *4 (S.D.N.Y. Apr. 30, 2021) (rejecting argument of improper coordination between parole and the NYPD because the Second Circuit had rejected the "stalking horse" theory, and that even if that theory was meritorious, "cooperation among different enforcement agencies and parole departments was permitted so long as the probation officers are pursuing legitimate probation-related objectives."). Thus, whatever

---

³ In fact, the evidence submitted by Hines and by the Government makes clear that the defendant used the seized phone to speak with Fennell. *Compare* Def. Ex. 7 (receipt of seizure, describing the telephone number of the seized phone as 518-221-1070) *with* Gov't Ex. F (March 11, 2017 conversation intercepted over the Title III wiretap of Fennell's phone in which the defendant uses the same telephone number).

⁴ Hines tries to distinguish *Cook*. But the most important distinction *favors* the Government's position: the defendant there was on probation, and "parolees 'have fewer expectations of privacy than probationers.'" *United States v. Braggs*, 5 F.4th 183, 187 n.3 (2d Cir. 2021) (citing *Samson v. California*, 547 U.S. 843, 850 (2006).

coordination there was between parole and law enforcement is of no moment: parole certainly had reason to believe that Hines was in violation of his parole conditions and that his cellphone would contain evidence of the same. That amply justifies the seizure of Hines' phone.

Similarly, while the Government does not agree with Hines' characterization of the manner by which the parole officers executed the search, Hines Reply Mem. at 7, even if taken at face value he provides no reason why that manner of search should affect the analysis of whether the search and seizure itself was reasonably related to the parole officer's duties, particularly given that, as detailed *supra* and as further described in the Government's Opposition Memorandum at 12–13, parole in fact had authority to conduct a search of Hines's entire residence. Similarly, whether state parole officers later examined the phone is irrelevant to whether the search and seizure was undertaken as part of their duties. *Accord Devaughn*, 2022 WL 101910, at *2 (after the seizure "[t]he parole officers photographed all recovered evidence and *then turned it over to the [local police department]*.") (emphasis added).

Contrary to Hines's conclusion, Hines offers no basis for relief under "existing Second Circuit precedent." Hines Reply Mem. at 11. Nor are there any facts in dispute that should affect the Court's analysis. The Government respectfully requests that the Court deny Hines's motion to suppress the seizure of his phone on June 14, 2017, without a hearing.

Very truly yours,

DAMIAN WILLIAMS
United States Attorney

by: /s Samuel Raymond
Samuel Raymond / Lindsey Keenan
Assistant United States Attorneys
(212) 637-6519 / -1565

cc: Sean Maher, Esq. (by ECF/Email)